WEST et ux. v. JACKSON et ux.—186 S. W. (2d) 915.

Eastern Section.   November 14, 1944.

Petition for Certiorari denied by Supreme Court, March 3, 1945.

J. W. Stone, of Harriman, and J. H. McCartt, of Wartburg, for appellants.

R. B. Cassell, of Harriman, for appellees.

HALE, J. J. M. West and wife filed this suit against Arnold R. Jackson and wife to invalidate a deed the Jacksons had obtained from the State for complainant's property which it claimed to have acquired at a tax sale. The Chancellor granted the relief sought and defendants appeal.

On March 7, 1934, suit was filed by the State for itself and for the use and benefit of Morgan County to recover 1932 taxes. The complainant herein, J. M. West, as Jerry West with 1800 other delinquent taxpayers was named a defendant thereto. There is no evidence that process was either issued for or served upon him. The Rule Docket shows the case was entered as State v. Vernon Adkisson "et al.", without giving the names of these "and others," and that "process issued October 23, 24, 25, 1934," without showing for whom it was issued. There is no Sheriff's return on the Rule Docket. The process has been lost. This Rule Docket entry is all that remains. There was no pro confesso entered.

The above cause No. 2595, was consolidated with No. 2594, brought to recover taxes for 1931, to which the Wests were not a party, as they paid their taxes for that

year. On December 21, 1936, the Clerk and Master filed a report in this consolidated cause showing it was necessary to sell the "following tracts of lands for taxes for 1931 and 1932. . . . Jerry West, 1st District, 75 acres, tax $65.55." This report was confirmed and the land ordered sold by decree entered at December term, 1936. It was advertised and sold on February 12, 1937, to the State for $65.55. This was confirmed at June term, 1938. West had no knowledge of these proceedings, although he was served with process in suits subsequently filed by the State for taxes for 1937-1941, both inclusive. However, no steps were taken by the State in these latter proceedings. West went to Wartburg in response to one of these subsequent summons but failing to find the Court in session or the Clerk and Master at his office, he concluded he had discharged his whole duty and there let the matter rest.

The record indicates that West is rather indolent and shiftless and was not at all worried over his inability to pay his taxes. Defendant Jackson appears to be of an altogether different type. He learned of West's difficulty and sought to trade places with him in 1935 or 1936, and pay him the difference. West refused. So in April, 1943, Jackson went to the Clerk and Master and paid $550.23 to cover taxes from 1932 to 1942, and a deed was executed to him and his wife for this property on May 4, 1943, by the Commissioner of Finance and Taxation, approved by the Governor and Attorney General. This was placed of record. West had no knowledge of any of these matters until May, 1943, when he learned Jackson had bought the property. He went to see defendant and inquired if he would let him have the place back, to which the defendant replied "he didn't believe he could

afford to do that.'' The present suit resulted. The complainants tendered the amount paid by defendants.

· West and wife owned this property as tenants by the entirety and they remained in possession all the time from the time they acquired the property in 1922, until they instituted this suit.

The Chancellor held the original proceedings void because (1) neither West nor his wife were in Court by service of process, and (2) that the deed from the State to the defendants was executed while complainants were in the adverse possession of these premises and was therefore champertous and void.

Our law does not judge any man before it hears and knows what he does. Judgment in absentia is contrary to the spirit of our institutions and loathsome to any one who has any knowledge of constitutional government.

Sec. 1591 of the Code, originating with Ch. 77, Acts 1923, in part provides: ''The attorney designated by the trustee with the approval of the county judge, shall after February 1, and not later than March 1, file suits in the circuit or chancery courts of the county for the collection of delinquent land taxes due the state, county, and municipality, as well as the interest, penalties, and costs attached to and a part of such taxes, which taxes, interest, penalties, and costs are declared a lien upon the land; and, for the enforcement of this lien, said suits shall be brought in the name of the state, in its own behalf and for the use and benefit of the county, and of any municipality certifying the lists of delinquent taxes. The bill shall be in substance and form as other bills of complaint for the enforcement of liens and shall include not less than twenty-five defendants, if that number are delinquent; and the bill (one bill) may be filed against

and contain the names of all the delinquent taxpayers in the county, and the fact that the bill contains the names of more than one defendant shall not be considered by the court multifarious, or a misjoinder of parties. All such suits, whether brought in the chancery court or circuit court, shall be prosecuted according to the rules of procedure of courts of chancery; and all lands impressed with the lien for taxes, interest, penalties, and costs shall be subject to sale under such proceedings, when the amount due is ascertained. The court shall order a sale of such land for cash, subject to the equity of redemption. At all sales, the clerk of the court, acting for the state, shall bid the debt ascertained to be due for taxes, interest, penalties, and the costs incident to the collection thereof, where no other bidder offers the same or larger bid.''

And Sec. 1593 is: ''Pro confesso may be taken and entered of record against any one or more defendants included in a bill and the cause proceeded with, against any one or more, to a final judgment and a sale of the property, without affecting the rights of the other parties to the suit. Any one or more defendants shall have the right to appeal and such appeal shall not affect the standing of the cause as to other parties to the proceedings.''

It is evident that although a proceeding in rem the procedure is the same as in any other Chancery cause —the defendant must be before the court by actual or constructive service of process. If this is not done, there would be a mere confiscation of property.

Says Chancellor Gibson: ''This is a fundamental maxim of Equity jurisdiction, and has always been sacredly observed. Indeed, it is a principle founded in natural justice, and of universal application, that no man can

be proceeded against in Court without notice. The inherent love of fair play contained in the maxim, Audi alteram partem, has always and everywhere been recognized by all Judges and Courts; and the practice of all tribunals is to render judgment against no one without giving him a chance to be heard in his own behalf. The law delights in giving to every man a day in Court to make his defence. Were the law otherwise no right would be certain, no property safe, no possession secure, fraud would revel in triumph, and trickery be supreme over good faith. No principle of the common law is more sacred than that no man shall be deprived of his property by the judgment of a Court without personal notice that he has been impleaded therein.'' Gibson suit in Chancery, Sec. 60.

■ The present case is wholly different from those relied upon by appellants, viz. Obion County v. Massengill, 177 Tenn. 477, 482, 151 S. W. (2d) 156; Esch v. Wilcox, Tenn. Sup., 178 S. W. (2d) 770; and Collins v. Oliver, 24 Tenn. App. 337, 144 S. W. (2d) 9, where the taxpayer was before the court by actual or constructive service of process. The present case is controlled by the opinion in Tennessee Marble & Brick Co. v. Young, 179 Tenn. 116, 163 S. W. (2d) 71, 75, wherein it is said: ''A decree may be assailed because of invalidity at any time. A void decree is in the same plight as though it never existed.''

■ Where the court has jurisdiction over the subject matter by actual or constructive notice to the taxpayer, then all questions must be settled in that cause (Code, Sec. 1609), but notice is essential. Code, Sec. 1591, supra. If no notice the decree is void, and the three year Statute of Limitation (Code, Sec. 1610) does not apply to a void decree. Tennessee Marble & Brick Co. v. Young, supra.

■ The appellants stress the fact that suits were instituted to recover taxes for the years 1937-1941, both inclusive, and that process was served on West in these cases. There was no consolidation of these cases with the former cause. It seems logical that if the State were claiming a valid vestiture of title in it by the decree at the June term, 1938, it would not claim taxes from the former owners for the years subsequent to the decree of confirmation.

The foregoing makes it unnecessary for us to pass on the question of champerty and we expressly pretermit it.

Affirmed at cost of appellants.

McAmis and Burnett, JJ., concur.