Tony Glenn RAST, Appellant,

v.

R. V. TERRY et ux., Elizabeth C.
Terry, Appellees.

Supreme Court of Tennessee.

Jan. 12, 1976.

Michael D. Galligan, McMinnville, DeWitt Puckett, Smithville, for appellant.

W. G. McDonough, McMinnville, for appellees.

## OPINION

HENRY, Justice.

This is a suit to set aside a tax deed.

The principal basis of the attack by the former property owners, who held the property as tenants by the entirety, is lack of actual or constructive notice of the tax sale. This, in turn, rests upon the alleged failure of the county sheriff to make due return of the process, "not to be found in my County" as required by Section 21–212 T.C.A. A secondary basis is that the record does not show that the Court directed the Clerk and Master to make publication as provided by law for non-residents. The Chancellor upheld these contentions, declared the tax deed to be void and set it aside.

We disagree.

### I.

By consent of the parties this controversy was submitted to the trial court for determination on the pleadings.[1]

It is alleged in the complaint:

---

1. This was not a proper case for submission on the pleadings, without an accompanying stipulation of fact, since sharp factual issues were involved. Had either party made a motion, under Rule 12.03 Tenn.R.Civ.P., for judgment on the pleadings, the court, upon proper analysis of the pleadings, would, or should, have treated it as one for summary judgment under Rule 56. When the parties agree to submit a case on the pleadings,

The record indicates that process was returned as to R. V. Terry "not to be found in my County" . . .

It was averred in the answer:

It is admitted . . . that the Sheriff, being unable to serve the summons in the matter on the Terrys, or either of them, returned said summons marked "not to be found in my County."

When the allegations of the complaint are admitted in the answer the subject matter thereof is removed as an issue, no proof is necessary and it becomes conclusive on the parties. *Gibson's Suits in Chancery,* § 410 (Fifth Ed.)

■ We, therefore, hold that the record shows that process was returned "not to be found in my County." [2]

### II.

Next, the Chancellor held that "the record does not disclose that there was any order by the court authorizing or directing the Clerk and Master to make publication. . . ."

The matter of publication is governed by statute. Section 21–212 T.C.A. outlines the conditions under which personal service of process may be dispensed with, and concludes with the proviso:

To dispense with process in either of the above cases, the facts shall be stated under oath in the bill, or by separate affidavit, or *appear by the return.* (Emphasis ours).

Section 21–213 T.C.A. provides, in pertinent part:

(T)he clerk, as soon as the necessary affidavit is made, shall enter upon the rule

docket an order requiring the defendant to appear at a certain day therein named . . .

■ It will be noted that this statute, in precise terms, would only authorize the rule docket entry in those cases supported by affidavit. When this section and the preceding section are read in the light of their manifest purpose, it becomes evident that it was the legislative intent that the docket entry be supported by affidavit *or return.* This is the construction placed upon these statutes by *Gibson's Suits in Chancery,* Sec. 205 (Fifth Ed.), wherein it is said:

(T)he clerk as soon as the necessary affidavit *or return* is made, shall enter upon the rule docket an order. (Emphasis ours)

Section 21–214 T.C.A. provides that "the *clerk* shall forthwith cause a copy of this order to be published. . . ."

■ The statutory scheme obviously contemplates that the clerk perform these ministerial duties without any order of the court directing publication.

We so hold.

■ From the facts, as found by the Chancellor, that a return not to be found etc., was not made, and that the court did not issue an order directing publication, the chancellor concludes that the defendants were not served with process or brought into court by publication. Assuming the facts so found to be true, the conclusion reached is a *non-sequitur* and is an incomplete and insufficient basis for voiding the tax deed.

This actually disposes of the assignments made in this Court, but it leaves the contro-

---

they have, in effect, made joint and several Rule 12.03 motions and when "matters outside the pleadings" are necessary to the determination of the suit, resort to the Rule 56 procedure is mandated. This was such a case.

2. In reaching this conclusion we have not considered Exhibit No. 1 to the Motion for a New Trial, which shows that as to R. V.

Terry, process was returned "not to be found in my County". A motion for a new trial is a mere pleading and is not evidence of what occurred at the trial. *Koehn v. Hooper,* 193 Tenn. 417, 246 S.W.2d 68 (1951). These exhibits were neither proved, admitted nor incorporated in a bill of exceptions.

versy dangling without decision. This record is not in shape for orderly appellate review nor is it sufficiently complete to support a decision on remand.

### III.

■ The Chancellor, in his memorandum opinion, said in part:

All of the tax proceeding was conducted while the undersigned was Chancellor. The Court can recall of his own knowledge that the tax suit in question was proceeded with only with great difficulty. A large part of the problems came as a result of the failure of officers to serve process. The Court recalls that at one time the entire tax proceeding was halted due, as this Court recalls, to the Court's belief that large numbers of defendants were not properly before the Court.

This is a significant—and perhaps controlling—finding, but it is totally lacking in support in this record, and adequate appellate review is precluded.

We are left with no choice but to vacate the judgment and remand for further proceedings. On remand the Chancellor will hear proof designed to clarify the issues presented in this controversy. We identify the issues but do not restrict the Chancellor to those discussed herein.

The threshold determination on remand must be the efficacy of defendant's affirmative plea of the statute of limitations as incorporated in § 67–2025 T.C.A. which provides, except as to persons laboring under disability, that

No suit shall be commenced in any court of the state to invalidate any tax title to land after three (3) years from the time said land was sold for taxes. . . .

The complaint alleges that "(t)he record indicates that the sale was conducted on March 5, 1970." The answer avers positively that the sale was held on March 5, 1970. However, the tax deed exhibited to the answer shows affirmatively "upon the 11th day of May 1972, said tract or parcel of land was struck off and sold to Tony Glenn Rast". The suit to set aside the tax sale was instituted on 5 May 1973, or over three years after the land was sold, if the sale was in fact conducted on 5 March 1970.

■ This, however, does not in and of itself require the dismissal of plaintiff's suit. It is fundamental that suits to collect delinquent taxes are proceedings in rem; however, it is basic to their validity and vitality that the taxpayer be before the court by actual or constructive service of process. *Naylor v. Billington*, 213 Tenn. 614, 378 S.W.2d 737 (1964). These suits have as their objective the enforcement of tax liens, but not by confiscation. Where the taxpayer is not properly before the court the resulting decree and sale is a nullity as to him and may be assailed at any time. *Tennessee Marble & Brick Co. v. Young*, 179 Tenn. 116, 163 S.W.2d 71 (1942). See also, *Naylor, supra*. If it be established on remand that the tax sale was void, § 67–2025 T.C.A. is not applicable.

Section 67–2023 T.C.A. specifies that "a tax deed of conveyance shall be an assurance of perfect title to the purchaser" and may only be invalidated by "proof that the land was not liable to sale for taxes or that the taxes . . . have been paid before said sale."

The complaint makes no such allegations. It is bottomed solely upon certain alleged procedural irregularities in connection with the sale.

■ But again the applicability of this Code section must yield to the proposition that a void decree will not support a tax title and the statute presupposes a valid vestiture of title in the purchaser. *Naylor v. Billington, supra*.

■ Thus it is that the final determination of the Chancellor must ultimately depend upon the proof with respect to notice. This Court will not look with favor upon an attack made upon a tax sale, where the taxes sued for were actually delinquent

**556**

and unpaid[3] at the time of the sale and adequate public notice was given. An additional relevant consideration is whether the tax records indicated the address of the land owner.

Upon remand leave to either party to propose appropriate amendments will be freely given, and the Chancellor will consider all relevant facts, to the end that the situation be fully developed and this controversy be decided on the basis of a complete and orderly record.

We caution that these facts must be developed by proof, either in the form of direct testimony, record evidence or stipulations.

Reversed and remanded

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

---

**3.** The suing taxpayer's failure to pay the taxes in this case is compounded by the fact that in an earlier conveyance in the chain of title there was an express agreement that he would pay the very taxes, the non-payment of which prompted the tax sale.